BERNICE M. JONES, ADMINISTRATRIX OF THE ESTATE OF BEVERLY A. JONES, DECEASED v. THOMAS GLENN ALLRED, RICHARD ALLEN HUBBARD, AND TONI C. KINSEY

No. 8019SC880

(Filed 19 May 1981)

**1. Automobiles § 66.2— identity of driver—sufficiency of circumstantial evidence**

Plaintiff's evidence was sufficient to support a jury finding that one defendant, rather than plaintiff's intestate, was the driver of a vehicle involved in an accident where it tended to show that defendant was observed driving the car, with plaintiff's intestate in the right front passenger seat, approximately fifteen minutes before the collision and six to eight miles from the scene of the collision; the position of the body of plaintiff's intestate in the car following the collision indicated that she suffered an impact to her face and

head on the passenger side of the car; the hood of the car was protruding through the windshield on the passenger side; the steering wheel of the car was very badly bent but there was no evidence that plaintiff's intestate suffered a steering wheel type of injury; and plaintiff's intestate had never driven her family's car and was too young to acquire a driver's license.

**2. Automobiles § 51.2— negligence of driver—excessive speed—sufficiency of circumstantial evidence**

Plaintiff's evidence was sufficient to support a jury finding that an automobile driver was negligent in approaching a curve at an excessive speed and failing to reduce speed or control the automobile so as to negotiate the curve successfully where it tended to show that the automobile left the road at a curve near a bridge over a river; the road was paved and approximately nineteen feet wide with a three foot shoulder; tire marks indicated that the automobile ran off the left side of the road into a ditch as it came into the curve, traveled beside the ditch, struck a dirt embankment, then overturned and came to rest on the bottom of the river; the tire marks were 122 feet in length from the curve to the dirt embankment, and the automobile traveled 75 feet beyond the point at which it first struck the embankment; and when found at the bottom of the river, the windshield of the car was gone and the hood of the car had been broken from its anchor next to the windshield and was protruding through the windshield on the passenger side.

**3. Automobiles §§ 97, 108.1— stepdaughter using family purpose automobile— driver's negligence imputed to stepdaughter and owner**

Where an automobile provided by the owner for family purposes was being used by a stepdaughter who was a member of the owner's household, and the stepdaughter permitted another person to drive the automobile and remained in the automobile as a passenger, the negligence of the driver was imputable to both the stepdaughter and the owner. G.S. 20-71.1.

**4. Rules of Civil Procedure § 50.3— motion for directed verdict—failure to state contributory negligence as ground**

The question of whether defendants' motion for a directed verdict should have been allowed on the ground of contributory negligence was not before the appellate court where defendants failed to state contributory negligence as a ground for their motion in the trial court. G.S. 1A-1, Rule 50(a).

Judge CLARK dissenting.

APPEAL by plaintiff from *Lupton, Judge.* Judgment entered 17 April 1980 in Superior Court, Randolph County. Heard in the Court of Appeals 31 March 1981.

Plaintiff, administratrix of the estate of Beverly A. Jones, brought this action to recover damages for the wrongful death of Beverly Jones. Plaintiff alleged that at approximately 7:30 p.m. on 30 October 1975 Beverly, defendant Hubbard, and defendant Kinsey were the occupants of an automobile, owned by defendant Allred, which left the traveled portion of a public road and collided with a concrete bridge abutment. Beverly died at the scene as

a result of serious injuries sustained in the collision. Plaintiff alleged that defendant Allred was the registered owner of the vehicle, that he maintained the vehicle for the use of his family, that Allred's stepdaughter, defendant Kinsey, a member of Allred's household, was using the vehicle on 30 October with Allred's permission and knowledge, and that defendant Hubbard was operating the vehicle at the time of the collision with the permission of Kinsey. Plaintiff alleged that Hubbard's negligent operation of the vehicle caused the collision and the wrongful death of Beverly.

In their separate answers, defendants admitted that the registration of the car was in Allred's name and that defendant Kinsey was a member of Allred's household, but denied that the car was being operated with Allred's permission on the occasion of the collision, denied that defendant Hubbard was operating the car at the time of the collision, and alleged that Beverly Jones was operating the car at the time of the collision. Each defendant admitted that Beverly Jones died as a result of injuries received in the collision.

At trial, plaintiff offered the testimony of Harland Jones, Beverly's brother, who, earlier in the evening on the day of the collision, had been a passenger in the car carrying the group with which Beverly was riding; Rupert C. Fruitt, a rescue squad member who was one of the first to arrive at the scene of the collision and who removed Beverly's body from the automobile; C. R. Byrd, a Highway Patrolman who arrived later at the scene and investigated the collision; Dr. Gordon B. Arnold, the medical examiner who examined Beverly's body after the collision; and Bernice Jones, Beverly's mother. At the close of plaintiff's evidence, defendants moved for a directed verdict pursuant to G.S. 1A-1, Rule 50 of the Rules of Civil Procedure on the grounds that the evidence was insufficient to show any negligence on the part of any of the three defendants, and more specifically that the evidence was insufficient to show who was operating the vehicle at the time of the accident. The trial court deferred ruling on this motion until the close of all the evidence.

Defendants' evidence consisted of the testimony of each of the defendants. At the close of all the evidence, defendants renewed their previously stated motion for a directed verdict, the trial court granted the motion, and plaintiff has appealed.

*Boyan & Loadholt, by Clarence C. Boyan, for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter, by Stephen A. Millikin and Jeri L. Whitfield, for defendant appellees.*

WELLS, Judge.

Defendants' motions for a directed verdict raised three questions for consideration by the trial court and for review by this Court: was plaintiff's evidence sufficient to support a finding by the jury (1) that Hubbard was the driver of the automobile at the time of the collision in which Beverly Jones met her death; (2) if so, did Hubbard operate the vehicle negligently, thereby causing the death of Beverly; and (3) if Hubbard was negligent in the operation of the vehicle, was his negligence was imputable to defendants Allred and Kinsey.

On a motion by defendant for a directed verdict in a jury case, the court must consider the evidence in the light most favorable to the plaintiff and may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff. All the evidence which tends to support plaintiff's claim must be taken as true and viewed in the light most favorable to the plaintiff, giving the plaintiff the benefit of every reasonable inference which may be legitimately drawn therefrom. *Dickinson v. Pake*, 284 N.C. 576, 583, 201 S.E. 2d 897, 902 (1974); *Kelly v. Harvester Co.*, 278 N.C. 153, 158, 179 S.E. 2d 396, 398 (1971); *Home Products Corp. v. Motor Freight, Inc.*, 46 N.C. App. 276, 277, 264 S.E. 2d 774, 775 (1980); *disc. rev. denied*, 300 N.C. 556, 270 S.E. 2d 107 (1980). A trial court should deny a defendant's motion for a directed verdict under G.S. 1A-1, Rule 50(a) when viewing the evidence in the light most favorable to the plaintiff and giving plaintiff the benefit of all reasonable inferences, the court finds any evidence more than a scintilla to support plaintiff's *prima facie* case in all its constituent elements. *Hunt v. Montgomery Ward and Co.*, 49 N.C. App. 638, 640, 272 S.E. 2d 357, 360 (1980).

Plaintiff's evidence as to the identity of the driver, all circumstantial in nature, was as follows. Harland Jones, Beverly's brother, age sixteen at the time of the collision, testified that on the night of 30 October 1975, Toni Kinsey drove to the Jones' residence to pick up Harland, Beverly, and Steve Hill. Kinsey then drove her car to Allen Hubbard's home. When Hubbard

entered the car, Kinsey moved toward the passenger side and Hubbard assumed the driver's seat; so that at about 7:00 p.m. on that evening, five people were riding in the automobile; Harland Jones and Steve Hill in the back seat, and Beverly in the front passenger seat, defendant Kinsey in between the two front seats, and defendant Hubbard in the driver's seat driving the automobile. At approximately 7:00 or 7:15 p.m., Hubbard stopped the car at a restaurant and let Harland and Steve out of the car. Hubbard then drove off with defendant Kinsey and Beverly each maintaining their positions in the front seat. Harland testified that the place where the collision occurred was approximately six to eight miles from the restaurant.

Fruitt, the rescue squad member who removed Beverly's body from the wrecked automobile, testified that when he arrived at the scene the vehicle was upside down resting on rocks in the Uwharrie River in the vicinity of Miller's Mill Bridge, headed north, the same direction as the path of travel of the automobile. Fruitt found Beverly's body in a "prone position" [sic] on the inside of the roof of the car, facing the floorboard of the car, with her head clamped between the top of the car and the hood. The hood had protruded through the windshield on the passenger side, about ten inches. Beverly's head was up toward the windshield and fastened "near the center or a little bit to the passenger side" of the car, while her feet were down towards the back of the car with possibly one of her feet propped up against the seat. Fruitt did not remember whether the windows of the car were up or down or whether the door on the driver's side opened freely or was forced open.

Byrd, the investigating Highway Patrolman, testified that the collision occurred at approximately 7:30 p.m., on 30 October 1975, on Miller's Mill Road near the bridge over the Uwharrie River. When he arrived at the scene, Beverly's body was in the process of being removed from the car, but he did not observe the position of her body in the car. Defendants Kinsey and Hubbard were present but they were not in the automobile. After the car was removed from the river, he observed its condition, and among other things, observed that the steering wheel was very badly bent.

Dr. Arnold, the medical examiner who examined Beverly's body after the collision, testified that Beverly died instantly as a result of a tremendous blow to her mouth area, a guillotine type

injury which penetrated to ear level on each side with near decapitation. Below the head, there were no injuries of any significance.

Bernice Jones, Beverly's mother, testified that prior to 30 October 1975 Beverly had attended one classroom session of driver's training, but had never been allowed to drive the Jones' family's car, and that Beverly would have reached her sixteenth birthday on 15 January 1976.

Our appellate courts have consistently approved of the use of circumstantial evidence to establish the identity of the driver of an automobile at the time of a collision. *See, Helms v. Rea,* 282 N.C. 610, 616-17, 194 S.E. 2d 1, 5-6 (1973); *Greene v. Nichols,* 274 N.C. 18, 22, 161 S.E. 2d 521, 523-24 (1968); *Drumwright v. Wood,* 266 N.C. 198, 203, 146 S.E. 2d 1, 5 (1966); *Rector v. Roberts,* 264 N.C. 324, 141 S.E. 2d 482 (1965); *Johnson v. Gladden,* 33 N.C. App. 191, 194, 234 S.E. 2d 459, 461 (1977); *accord, Talbert v. Choplin,* 40 N.C. App. 360, 365-66, 253 S.E. 2d 37, 41 (1979). As stated by Justice (later Chief Justice) Sharp in *Helms,* in many instances, facts can be proved only by circumstantial evidence. *See also, Johnson v. Gladden, supra.* For a thorough discussion of the pertinent rules and cases, *see,* 2 Strong's N.C. Index 3d, Automobiles, § 66, at 226-30.

In *Drumwright,* the circumstantial evidence which the Court found sufficient to support a jury verdict for plaintiff as to the identity of the driver was that plaintiff did not know how to drive an automobile; the deceased owner was observed driving his automobile with plaintiff as a passenger about fifteen minutes before the collision; plaintiff's body was found protruding through the windshield on the right side of the car; and the deceased owner's body was found sprawled across the front seat.

In *Johnson,* where this Court reversed an order granting defendant's motion for a directed verdict, holding that plaintiff's circumstantial evidence permitted a reasonable inference that defendant was driving the car at the time of the accident, plaintiff's evidence was that defendant was the owner of the car, and that fifteen minutes before and five miles away from the collision defendant was seen in the driver's seat of the car and plaintiff's intestate was seen as a passenger in the back seat, and after the collision the bodies of all three occupants of the vehicle were found outside of the vehicle, widely dispersed.

In *Greene,* the evidence which the Court held sufficient to establish the identity of the driver was that plaintiff's intestate

was a fifteen year old female who had no driver's license, and was seen shortly before the collision riding as a passenger in the front seat, that the deceased owner was observed driving the car prior to the collision, that at the scene, the deceased owner's body was found outside the car on the left side, and that plaintiff's intestate was found in the front seat of the car on the right side.

In *Helms,* the Court found the circumstantial evidence presented by defendant in support of his counterclaim, to be sufficient to allow an inference that plaintiff was the driver of the car at the time of the collision. The evidence supporting this inference was that: defendant's intestate disliked to drive and was not dressed to drive on the occasion; defendant's intestate's injuries were consistent with the injuries she would have received had she been sitting in the passenger's seat; and although both occupants of the car were discovered outside of the car after the collision, the position of the bodies made it unlikely that defendant's intestate was driving.

[1]    In summary, in the case *sub judice,* plaintiff's evidence tended to show the following: (1) approximately fifteen minutes before and six to eight miles from the scene of the collision, defendant Hubbard was observed driving the car, with Beverly Jones in the front passenger seat on the right side; (2) the position of Beverly Jones' body in the car following the collision indicated that she suffered the impact to her face and head on the passenger's side of the car; (3) the steering wheel of the car was very badly bent, but Beverly had no significant injuries except for the head wound caused by the hood, there being no evidence of a steering wheel type of injury; and, (4) Beverly had never driven her family's car and was too young to acquire a driver's license. This evidence is sufficient to permit the jury to find as a logical and reasonable inference that defendant Hubbard was the driver of the car at the time of the collision. *Compare, Stegall v. Sledge,* 247 N.C. 718, 102 S.E. 2d 115 (1958); *Parker v. Wilson,* 247 N.C. 47, 100 S.E. 2d 258 (1957).

[2]    Plaintiff's evidence as to the negligence of the driver of the car, also circumstantial in nature, was as follows. Byrd, the investigating Highway Patrolman, testified that the collision occurred at a curve in Miller's Mill Road near the bridge over the Uwharrie River. At that point there was a steep embankment or drop off from the bridge down to the water level. The road was a

paved road, approximately nineteen feet wide with a three foot shoulder. Patrolman Byrd observed tire marks (scuff marks, skid marks) on the paved portion of the left side of Miller's Mill Road from the direction in which the car was travelling, and tire marks on the shoulder indicating where the vehicle had left the road. As the car came into the curve, it ran off the left side of the road into a ditch, traveling along beside the ditch, striking a dirt embankment, then overturning and coming to rest on the bottom of the river. The tire impressions observed by him appeared to be in a continuous line from the dirt embankment back up into the curve of the road where they started. The tire impression marks were measured as 122 feet in length, and the car continued to travel seventy-five feet beyond the point at which it first impacted the dirt embankment.

Fruitt testified that when he reached the car, he found the car upside down in the river; the windshield of the car was "gone"; and the hood of the car had been broken from its anchor next to the windshield and was protruding through the windshield area of the car on the passenger's side. Fruitt and others used a crowbar to pry the hood away from the top of the car to free Beverly so that they could remove her.

The foregoing evidence strongly supports an inference of negligence on the part of the driver of the vehicle. In *Greene v. Nichols, supra,* at 26-27, 161 S.E. 2d at 527, our Supreme Court held that a *prima facie* case of actionable negligence is established when a motor vehicle suddenly leaves the traveled portion of a highway, even where there is no apparent reason for such departure.

> It is generally accepted that an automobile which has been traveling on the highway, following "the thread of the road" does not suddenly leave it if the driver uses proper care. . . . The inference of driver-negligence from such a departure is not based upon mere speculation or conjecture; it is based upon collective experience, which has shown it to be the "more reasonable probability."

274 N.C. at 26, 161 S.E. 2d at 526. In the case *sub judice,* plaintiff's evidence goes beyond a "more reasonable probability". Surpassing the *prima facie* case established by the sudden departure of the vehicle from the highway, plaintiff's evidence shows excessive speed approaching a curve in the road and failure to

reduce speed or control the vehicle so as to negotiate the curve without a collision. *See, Mann v. Transportation Co. and Tillett v. Transportation Co.,* 283 N.C. 734, 745, 198 S.E. 2d 558, 556 (1973).

[3] Having sufficiently established negligence on the part of the driver of the automobile, under the provisions of G.S. 20-71.1[1] plaintiff was entitled to go to the jury against the owner of the car, defendant Allred. *See, Bowen v. Gardner,* 275 N.C. 363, 369-70, 168 S.E. 2d 47, 52 (1969); *White v. Vananda,* 13 N.C. App. 19, 185 S.E. 2d 247 (1971); *Allen v. Schiller,* 6 N.C. App. 392, 169 S.E. 2d 924 (1969).

Plaintiff's evidence showing that defendant Allred's family purpose automobile initially embarked upon the tragic journey of 30 October 1975 with his stepdaughter, defendant Kinsey, as the driver and showing that defendant Kinsey allowed and permitted Hubbard to drive the car and remained in the car as a passenger at the time of the collision, the negligence of defendant Hubbard is imputable to defendant Kinsey. *See, Rector v. Roberts, supra,* at 326, 141 S.E. 2d at 484; *Goss v. Williams,* 196 N.C. 213, 217-19, 145 S.E. 169, 171-72 (1928).

[4] In their brief, defendants contend that we should affirm the trial court's order because plaintiff's evidence shows that Beverly Jones was contributorily negligent in riding in an automobile when the driver was consuming beer. Defendants did not state contributory negligence as a grounds for their motions for a directed verdict. The requirement set forth in G.S. 1A-1, Rule 50(a) of the Rules of Civil Procedure that "a motion for a directed verdict shall state the specific grounds therefore" is mandatory. *Anderson v. Butler,* 284 N.C. 723, 729, 202 S.E. 2d 585, 588 (1974);

---

1. § 20-71.1. Registration evidence of ownership; ownership evidence of defendant's responsibility for conduct of operation. — (a) In all actions to recover damages for injury to the person or to property or for the death of a person, arising out of an accident or collision involving a motor vehicle, proof of ownership of such motor vehicle at the time of such accident or collision shall be prima facie evidence that said motor vehicle was being operated and used with the authority, consent, and knowledge of the owner in the very transaction out of which said injury or cause of action arose.

(b) Proof of the registration of a motor vehicle in the name of any person, firm, or corporation, shall for the purpose of any such action, be prima facie evidence of ownership and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment.

*Love v. Pressley,* 34 N.C. App. 503, 511, 239 S.E. 2d 574, 580 (1977), *disc. rev. denied,* 294 N.C. 441, 241 S.E. 2d 843-44 (1978); *accord, Feibus & Co. v. Construction Co.,* 301 N.C. 294, 271 S.E. 2d 385 (1980). Defendants not having stated contributory negligence as a ground for their motions, that question is not before us in this appeal. *Love v. Pressley, supra; see also, Lee v. Tire Co.,* 40 N.C. App. 150, 156-57, 252 S.E. 2d 252, 256-57, *disc. rev. denied,* 297 N.C. 454, 256 S.E. 2d 807 (1979).

We hold that plaintiff's evidence was sufficient to take the case to the jury on the actionable negligence of all three defendants.

Reversed.

Judge VAUGHN concurs.

Judge CLARK dissents.

CLARK, Judge, dissenting:

The plaintiff first had the burden of offering evidence sufficient to justify a finding by the jury that defendant Hubbard was the driver of the automobile at the time of the collision.

The majority, in summary, listed four facts which it concluded were sufficient to permit the jury to find that Hubbard was the driver. The first listed fact is that "(1) approximately fifteen minutes before and six to eight miles from the scene of the collision, defendant Hubbard was observed driving the car, with Beverly Jones in the front passenger seat on the right side . . . ." Trooper Byrd who investigated the accident, testified that it occurred about 7:30 p.m. Harland Jones testified that the car left the grill around 7:00 or a quarter after. This fact alone is not sufficient to support a jury finding, and in my opinion the other three listed facts are not sufficient to raise a logical inference that Hubbard was driving when considered with the other circumstances, including the facts that Beverly Jones was taking driver training; that the vehicle traveled off the pavement and into a ditch, went over an embankment, flipped over, and landed fifteen feet below in a rocky stream. These circumstances support the testimony of the other two occupants that Beverly Jones, an

inexperienced driver, lost control while operating the automobile, and the positions of the bodies in the vehicles after the collision do not support plaintiff's claim.

In my opinion the evidence was sufficient to raise only speculation or conjecture that Hubbard was operating the automobile.

I vote to affirm.